IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DONALD M. DORWARD,              §
                                §
                 Plaintiff,     §
                                § Civil Action No. 3:09-CV-0018-D
VS.                             §
                                §
JORGE A. RAMIREZ,               §
Individually and as Code        §
Compliance Officer of the City  §
of Cockrell Hill, et al.,       §
                                §
                 Defendants.    §

MEMORANDUM OPINION
AND ORDER

In this action arising out of a municipality's abatement of an alleged nuisance, defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(c).  The court must decide whether plaintiff has stated claims on which relief can be granted and whether it should abstain from exercising jurisdiction over his claims for injunctive and declaratory relief.  For the reasons that follow, the court grants in part and denies in part the motion, concludes that abstention is required as to certain of requests for relief, and grants plaintiff leave to replead certain claims.

I

This is an action by plaintiff Donald M. Dorward ("Dorward") under 42 U.S.C. § 1983 and Texas law against defendants City of Cockrell Hill ("City") and five of its employees: Jorge A. Ramirez ("Officer Ramirez"), Merced Carrillo ("Officer Carrillo"), Michael W. Sellers ("Chief Sellers"), John Doe ("Doe"), and Richard Roe

("Roe") (collectively "defendants," unless the context otherwise requires), individually and in their official capacities,[1] and against defendant Waste Management of Texas, Inc. ("Waste Management"). Dorward asserts constitutional and state-law claims arising from the City's enforcement and prosecution of certain nuisance ordinances against Dorward.

According to Dorward's first amended complaint ("complaint"), he owns a residential building lot ("the Lot") in Cockrell Hill, Texas. For decades, he and his family maintained a garden on the Lot, in which they cultivated a variety of plants, bulbs, and trees, including several rare or irreplaceable species. The garden also contained pavestone and brick pathways, landscape timbers, an underground sprinkler system, pots, topsoil, and two in-ground fish ponds, one of which contained goldfish.

The events that precipitated this lawsuit began in 2008, when Officer Ramirez, a City Code Compliance Officer, issued Dorward two citations on separate occasions based on Dorward's maintenance of

---

[1]A suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n. 55 (1978). If the government entity receives notice and an opportunity to respond, an "official-capacity suit" is treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A suit against a municipal official in his official capacity is not a suit against the official personally, because the real party in interest is the entity. *Id.* Accordingly, Dorward's claims against the individual defendants in their official capacities are treated as claims against the City and are discussed together.

the garden.   Dorward pleaded "not guilty" to a May 2008 citation for violating § 93.18 of the Cockrell Hill City Code ("City Code"), which alleged the presence of "weeds, grass, trash, and other unsightly matter" at the Lot.   Compl. ¶ 16.   Dorward also pleaded "not guilty" to an October 2008 citation for violating § 93.15 of the Code, which alleged that Dorward had created a nuisance at the Lot.[2]   The City initiated a criminal prosecution in the Cockrell Hill Municipal Court based on this citation.

In December 2008 Officer Ramirez executed an affidavit and obtained from a magistrate a search warrant that authorized the search and inspection of the Lot "to determine the existence of any violation of the health, fire or building/zoning regulations and the removal of any violations of weed or litter ordinances or statu[tes]."   Compl. ¶ 22.   Dorward alleges that Officer Ramirez's affidavit did not disclose that a "prosecution was pending" against Dorward based on the October 2008 citation.   *Id.*   He also avers that Officer Ramirez applied for the warrant "after consultation" with Chief Sellers, the City's Chief of Police, and "approval by him."   *Id.*   Dorward avers that he did not receive adequate notice or a hearing in the Cockrell Hill Municipal Court before the search warrant was issued.   Specifically, he points to a lack of notice that, if within one year, he committed another violation of a

_____

[2]As quoted in count six of the complaint, § 93.15 prohibits the maintenance on property of stagnant water, "carrion, filth, or other impure, overgrown or unwholesome matter."   Compl. ¶ 62.

similar nature that posed a danger to the public health and safety, the City would be permitted to correct the violation at his expense, without further notice.

Hours after obtaining the warrant, Officer Ramirez and Officer Carrillo (a City police officer), and two unidentified City employees (defendants Doe and Roe), arrived at the Lot and delivered the warrant to a visitor who was present there. Officers Ramirez and Carrillo then cut through a fence surrounding the Lot, and, with the help of Doe and Roe, brought in a tractor with a front-end loader and backhoe. They subsequently unearthed and removed from the Lot "a variety of living and healthy plants," Compl. ¶ 25, damaged and/or destroyed several trees, and damaged, destroyed, and removed from the Lot the pavestone and brick pathways, landscape timbers, underground sprinkler system, pots, topsoil, and one of the two in-ground fishponds, including the goldfish it contained, and caused these items to be placed in a dumpster owned by Waste Management. Dorward avers that "[i]n damaging the burr oak tree, Ramirez directed Doe repeatedly to ram the burr oak tree[.]" *Id.* at ¶ 26. When Dorward approached the Lot, Officer Carrillo displayed a firearm allegedly to prevent Dorward from entering the Lot or attempting to preserve the items removed from it. Dorward further avers that defendants "appear to still wish that the contents of the 'dumpster' be disposed of at a landfill." *Id.* at ¶ 30.

- 4 -

Based on the foregoing allegations, Dorward brings multiple claims against defendants under both 42 U.S.C. § 1983 and Texas law: for a "violation" of § 1983[3] (based on an alleged due process violation), for an anticipatory "violation" of § 1983 (same), denial of equal protection, improper use of a search warrant, violation of Cockrell Hill Code § 93.16, declaratory judgment, abuse of process, conversion, violation of the Texas Theft Liability Act ("TTLA"), trespass to real property, trespass to personal property, bailment, negligence, violation of the Texas Code of Criminal Procedure ("Texas CCP"), and civil conspiracy.

Waste Management is mentioned only twice——in ¶¶ 27 and 30——in the facts section of the complaint.  The factual allegations upon which Waste Management's liability is predicated are as follows:

> Ramirez, Carrillo, Doe and Roe caused the plants, pavestones, bricks, landscape timbers, sprinkler system pipes, pots, topsoil and the fish removed from the Lot to be placed in a "dumpster" owned and provided by Waste Management.

Compl. ¶ 27.

---

[3]There is no such thing as a "violation" of § 1983.  "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates," and an "underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).  Section 1983 therefore provides a remedial mechanism for alleged violations of constitutional or statutory rights.  Section 1983 is not itself violated.

> On January 9, 2009, although Ramirez, the City
> and Waste Management had not yet caused Waste
> Management to remove the "dumpster," to
> transfer it to a landfill and to cause its
> contents to be buried there, they had not done
> so, but Ramirez, Carillo, Doe, Roe, and the
> City appear to still wish that the contents of
> the "dumpster" be disposed of at a landfill.

*Id.* at ¶ 30.

Of the eighteen claims alleged in the complaint, eight expressly or implicitly assert liability against Waste Management: count two (anticipatory violation of § 1983), count nine (conversion), count ten (TTLA), count thirteen (bailment), count fifteen (violation of the Texas CCP), count sixteen (civil conspiracy), count seventeen (exemplary damages), and count eighteen (attorney's fees). Dorward seeks retrospective and prospective relief. He sues, *inter alia*, for compensatory damages, exemplary damages, attorney's fees, a declaration that he does not owe the fees that the City has imposed, and an injunction that requires defendants to maintain custody and control of, and prevent damage to, disposal, or loss of the items that were removed from the Lot and placed in the dumpster.

Defendants move the court to abstain from exercising jurisdiction over Dorward's claims for injunctive and declaratory relief, and they move under Rule 12(b)(6) to dismiss all remaining claims except the due process claim against the individual defendants. Waste Management separately moves under Rule 12(c) for

judgment on the pleadings.[4]  Dorward opposes both motions.

## II

The court turns first to defendants' motion.  Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl.*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive the motion, a plaintiff must plead "enough facts to state a claim to

---

[4]Although Waste Management states that it moves to dismiss under both Rule 12(b)(6) and Rule 12(c), the court will construe the motion as made under Rule 12(c) because it was filed after Waste Management filed an answer.  *See* Rule 12(b) ("A motion asserting [failure to state a claim upon which relief can be granted] must be made before pleading if a responsive pleading is allowed."); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1361, at 92 (3d ed. 2004) ("If the defendant decides to assert a Rule 12(b) defense by motion, then he must do so *before* filing the answer." (emphasis added)).

relief that is plausible on its face." *Bell Atl.*, 550 U.S. at 570.
"A claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." *Ashcroft*, 129
S.Ct. at 1949.   "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." *Id; see also
Bell Atl.*, 550 U.S. at 555 ("Factual allegations must be enough to
raise a right to relief above the speculative level[.]").  "[W]here
the well-pleaded facts do not permit the court to infer more than
the mere possibility of misconduct, the complaint has alleged——but
it has not 'shown'——that the pleader is entitled to relief."
*Ashcroft*, 129 S.Ct. at 1950 (quoting Rule 8(a)(2) (alteration
omitted)).

### III

The court considers first the merits of Dorward's
constitutional claims.

### A

Dorward alleges in count one that defendants violated his
constitutional right to due process by failing to give him prior
notice and an adequate hearing before entering the Lot and
removing, damaging, and/or destroying plants, trees, and other
items it contained.  Relying on *Monell v. Department of Social
Services of New York*, 436 U.S. 658 (1978), defendants argue that

Dorward cannot maintain this claim against the City because he has not adequately alleged that the City can be liable for its employees' actions with respect to Dorward's garden.

1

Section 1983 provides a cause of action against any "person" who, under color of law, deprives another of a constitutional or federal statutory right. Although municipalities are "persons" under § 1983, *see Monell*, 436 U.S. at 690, they cannot be held liable simply on a theory of *respondeat superior*, *id.* at 691. Rather, liability obtains only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* at 694. In general, "[m]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694); *see also Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006) ("Normally, a plaintiff must identify a policy or custom that gave rise to the plaintiff's injury before he may prevail." (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). "It is well-established, however, that a single decision by an official can be grounds for section 1983 liability where the decision was rendered by an

individual with 'final policy making authority.'"  *Gelin*, 456 F.3d at 527 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Brady v. Fort Bend County*, 145 F.3d 691, 698 (5th Cir. 1998)).  "Where liability is based upon a single decision by an official, '[a] court's task is to identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'"  *Id.* (quoting *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85 (1997) (some internal quotation marks omitted)).

> City policymakers not only govern conduct;
> they decide the goals for a particular city
> function and devise the means of achieving
> those goals.  Policymakers act in the place of
> the governing body in the area of their
> responsibility; they are not supervised except
> as to the totality of their performance
> . . . .  The governing body may delegate
> policymaking authority in either of two ways.
> It may delegate policymaking power by an
> express statement, by a job description or by
> other formal action.  Or it may, by its
> conduct or practice, encourage or acknowledge
> the agent in a policymaking role.  In either
> case, the delegation of policymaking authority
> requires more than a showing of mere
> discretion or decisionmaking authority on the
> part of the delegee.

*Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984).  "[T]he identification of those officials whose decisions represent the official policy of the local governmental unit" is a question of state law "to be resolved by the trial judge *before* the case is submitted to the jury."  *Jett*, 491 U.S. at 737.

- 10 -

2

Defendants maintain that Dorward has not adequately alleged the City's liability under *Monell* because he has not identified any official policy or custom that was the moving force behind the alleged due process violation. Dorward responds that Chief Sellers, as the City's Chief of Police, is a policymaker who can subject the City to liability and that it was Chief Sellers' decision to destroy Dorward's garden without prior notice or a hearing. Defendants posit that Dorward cannot rely on this theory of municipal liability because Dorward did not identify Chief Sellers as a policymaker in the complaint.

3

The court initially holds that Dorward has not sufficiently pleaded an official policy or custom that can subject the City to § 1983 liability for violation of his constitutional right of due process. Although in count four of the complaint, entitled "Municipal Liability," he alleges that "[t]he acts of Ramirez, Sellers, and Carrillo in obtaining and executing the search warrant with respect to the Lot were conducted pursuant to official municipal policy," Compl. ¶ 55, this conclusory allegation will not permit Dorward's due process claim to withstand dismissal under *Monell*. The allegation does not point to any identifiable City policy or custom or delineate any particular facts relevant to his claim that he was denied prior notice and an adequate hearing. *See*

*Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."); *Bennett*, 728 F.2d at 767 (reasoning that § 1983 plaintiff "must identify the policy, connect the policy to the [governmental entity] itself, and show that the particular injury was incurred because of the execution of that policy").

Consequently, to determine whether the City can be liable under § 1983, the court must decide whether Dorward has adequately alleged that his due process rights were violated as a result of an act or decision of a person who "possesse[d] final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). The court holds that Dorward has not sufficiently alleged the existence of a final policymaker. All that Dorward has pleaded is that Chief Sellers is the City's Chief of Police and that he approved Ramirez's affidavit for a search warrant. This is insufficient of itself, however, to identify a final policymaker. It is not reasonable to infer based solely on Chief Seller's status as Chief of Police that he has been delegated final policymaking authority with respect to enforcement of the City's ordinances, including the determination of enforcement goals, strategies, and actions to obtain compliance with the nuisance laws. *See, e.g., Gros v. City*

*of Grand Prairie, Tex.*, 181 F.3d 613, 616 (5th Cir. 1999) (holding

that there is no presumptive final policymaker).

> [T]he Supreme Court has evinced no preference
> for any single body as the source of municipal
> policymaking authority.  Instead, the Court
> has remarked that "one may expect to find a
> rich variety of ways in which the power of
> [local] government is distributed among a host
> of different officials and bodies."  The Court
> has also rejected the need for establishing
> any default final policymaker, finding that
> "state law . . . will *always* direct a court to
> some official or body that has the
> responsibility for making law or setting
> policy in any given area of a local
> government's business."

*Id.* at 615-16 (citations omitted) (citing *City of St. Louis v.

Praprotnik*, 485 U.S. 112, 125 (1988)); *see also Dallas Police Ass'n

v. City of Dallas*, 2004 WL 2331610, at *4 (N.D. Tex. Oct 15, 2004)

(Fitzwater, J.) (holding in context of summary judgment motion that

although police chief possessed discretion or decisionmaking

authority, he did not have policymaking authority); *Gros v. City of

Grand Prairie, Tex.*, 34 Fed. Appx. 150, 2002 WL 494040, at *4 (5th

Cir. May 12, 2002) (per curiam) (affirming conclusion that chief of

police was not policymaker); *Furstenau v. City of Naperville*, 2008

WL 5412872, at *6 (N.D. Ill. Dec. 23, 2008) (holding that plaintiff

failed to plead that police chief was final policymaker where

allegations only showed that police chief was a decisionmaker).

Because Dorward has failed to plead that Chief Sellers was a

policymaker, the court need not address the "moving force" element

of municipal liability.

- 13 -

Accordingly, the court dismisses Dorward's due process claim against the City, but it grants him leave to replead[5] if he can plead a viable claim against the City.[6]

B

In his second count, Dorward alleges a claim for anticipatory violation of § 1983 based on an impending violation of his due process rights through spoliation of evidence. He avers that defendants intend to destroy and/or dispose of the plants and other items that were removed from the Lot and placed in a dumpster. He

---

[5]As to this and other claims addressed below that the court permits Dorward to replead, the court observes:

> in view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

[6]If Dorward can adequately replead this claim, he must still prove that Chief Sellers is a final policymaker. *See Dallas Police Ass'n*, 2004 WL 2331610, at *4 (summary judgment opinion) ("The burden rests on [plaintiff] to identify the positive law or evidence of custom demonstrating that [deputy chief of police] was a policymaker.") (citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 244 (5th Cir. 1999); *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 99 (5th Cir. 1994)).

avers that these items constitute both "necessary exculpatory evidence" in his criminal prosecution in the Cockrell Hill Municipal Court, Compl. ¶ 41, and "relevant evidence" in the instant action, *id.* at ¶ 42. He seeks injunctive relief that prevents defendants from destroying or disposing of the items in the dumpster. Defendants contend first that the court lacks subject matter jurisdiction over this claim because it is not ripe, and second, if the claim is ripe, that jurisdiction is nonetheless barred by the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).

1

The court considers first the ripeness issue because it is a prerequisite to the exercise of federal jurisdiction. *See Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). "'The basic rationale [behind the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Roark & Hardee LP v. City of Austin,* 522 F.3d 533, 544 (5th Cir. 2008) (alteration in original) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). It "focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention," *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993), and weeds out "those matters that are premature because the injury is speculative and may never occur,"

- 15 -

*United Transportation Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (quoting *Abbott Labs.*, 387 U.S. at 149).

Defendants argue that Dorward's second claim is not ripe because it is based on mere alleged intentions and he has "not yet in fact suffered a concrete injury," Ds. Reply Br. 3, even assuming that he is on the verge of doing so. Dorward counters that this claim is ripe because it alleges imminent injury based on the destruction or disposal of the items in the dumpster.

The court concludes that this claim is ripe. Taking as true Dorward's allegation that plants were uprooted and other items were removed from the Lot and placed in a dumpster, it is only reasonable to infer that the plants are in a state of decomposition and that the dumpster is merely a temporary holding container for the removed items. The next logical step to be taken is the permanent destruction or disposal of the dumpster's contents, e.g., through transportation to a landfill. Dorward's alleged injury, therefore, is neither speculative nor abstract. It is instead sufficiently likely to confer subject matter jurisdiction, and the due process issue implicated by Dorward's request for injunctive relief is fit for judicial consideration. Further, because the basis of this request is the preservation of the items in the

dumpster, Dorward would suffer hardship were the court to hold that his claim is unripe until the items are actually disposed of or destroyed, as defendants suggest.  *See Public Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 573 (8th Cir. 2003) (addressing hardship prong) ("The plaintiffs need not wait until the threatened injury occurs[.]" (internal quotation marks omitted)).

                                    2

     Having concluded that it has subject matter jurisdiction over Dorward's second claim, the court turns next to the question whether it should abstain from exercising jurisdiction.  Grounded in principles of comity and federalism, the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971), holds that "federal intervention in ongoing state criminal proceedings is barred absent extraordinary circumstances." *Musslewhite v. State Bar of Tex.*, 32 F.3d 942, 947 (5th Cir. 1994) (citing *Younger*, 401 U.S. 37).  Abstention is appropriate where state proceedings (1) are pending at the time the federal action is filed, (2) implicate important state interests, and (3) provide an adequate opportunity to raise the federal claims.  *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

     Defendants maintain that the court should abstain from exercising jurisdiction over Dorward's second claim because the injunctive relief requested would interfere with the criminal

proceeding pending against Dorward in the Cockrell Hill Municipal Court, the important state interest in the enforcement of its criminal laws is implicated, and the Texas criminal court system, of which the Cockrell Hill Municipal Court is part, affords Dorward an adequate opportunity to raise his concerns about the spoliation of evidence and to obtain any injunctive relief necessary to protect his due process rights.   Dorward opposes abstention, contending that he is not seeking to enjoin the pending municipal court prosecution but merely to preserve evidence relevant both to that proceeding and to the instant action.   He posits that defendants cannot argue that the requested injunctive relief will interfere with an important state interest because they left the removed items in a dumpster, contrary to the Texas Rules of Criminal Procedure, and had no intention of using them in the municipal court proceeding.

The court concludes that it should abstain under *Younger*.[7] First, it is undisputed that a municipal court prosecution is pending against Dorward.[8]   And the due process concerns that

_____

[7]This holding is consistent with the court's January 14, 2009 order declining to exercise jurisdiction over Dorward's request for a temporary restraining order against the destruction or disposal of the items removed from the Lot.   *See Dorward v. Ramirez*, No. 3:09-CV-0018-D, order at 1 (N.D. Tex. Jan. 14, 2009) (Fitzwater, C.J.).

[8]Whether a state proceeding is "pending" for purposes of *Younger* abstention is determined as of "the time that the federal complaint is filed.  If a state action is pending at this time, the federal action must be dismissed." *DeSpain v. Johnston*, 731 F.2d

Dorward raises, and the injunctive relief that he requests, relate to an important issue in that proceeding: specifically, the protection of his due process rights through the preservation of evidence that may tend to exculpate him. It is "well settled that the *Younger* abstention doctrine is fully applicable even where federal intervention would not bring the proceeding to a halt." *Price v. Porter*, 2009 WL 1210509, at *3 (W.D. La. May 1, 2009). This court's resolution of the due process issue and issuance of the requested injunctive relief would be done against the backdrop of the pending municipal court proceedings and could effectively render it unnecessary for Dorward to raise, and the municipal court to decide, the issue in the criminal proceeding. *Cf. Ballard v. Wilson*, 856 F.2d 1568, 1570 (5th Cir. 1988) (abstaining under *Younger* where plaintiff's requested injunctive or declaratory relief "would unavoidably be decided against the backdrop of pending state proceedings" and "affect [their] course and outcome"). Moreover, Dorward offers no reason why the Cockrell Hill Municipal Court would be incapable of protecting his due process rights, and *Younger* precludes this court from making such

---

1171, 1178 (5th Cir. 1984). Further, "[t]he state interest that is triggered by the institution of the state proceeding continues through the completion of the state appeals process," and therefore *Younger* abstention is required where "the state appellate procedure has not been exhausted." *Id.* at 1177-78. At the time Dorward initiated this lawsuit, the municipal criminal prosecution was ongoing, and, in his briefing, Dorward does not suggest that it has concluded.

a presumption. *See Price*, 2009 WL 1210509, at *3 ("The policy of equitable restraint expressed in *Younger* counsels against any federal intervention in pending legal proceedings that could be interpreted as reflecting negatively on the state court's ability to enforce constitutional principles." (internal quotation marks omitted)).  Further, although Dorward argues that the items placed in the dumpster are also relevant evidence in this lawsuit, this does not place his claim within one of the "narrowly delimited" exceptions to the *Younger* doctrine. *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004).[9]  Nor does it negate its applicability.  To the extent that the Cockrell Hill Municipal Court determines that the evidence must be preserved to protect Dorward's due process rights, the evidence will also be available for use in this case.

Second, the pending municipal court prosecution implicates the important state interest in enforcing its criminal laws. *See DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984) ("The

_____

[9]These exceptions are as follows:

> (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it, or (3) application of the doctrine was waived.

*Tex. Ass'n of Bus.*, 388 F.3d at 519 (quotation marks omitted).

state has a strong interest in enforcing its criminal laws.  If the only risk to the state defendant's federal rights is one that can be eliminated by the defense to a single criminal prosecution, the balance tips heavily in favor of the state government and its interest in enforcing its criminal laws.").  The court rejects Dorward's unsupported argument that defendants' leaving the removed items in a dumpster essentially amounts to a waiver of, or estops them from asserting, an important state interest.

Third, Dorward suggests no reason why he would lack an opportunity to assert his due process rights in the Cockrell Hill Municipal Court and obtain any relief to which he is constitutionally entitled.  Nor is any reason apparent to the court, given that protection of a criminal defendant's due process rights is one of a criminal court's basic functions.

Accordingly, the court abstains from exercising jurisdiction over Dorward's second count.  The court dismisses the claim without prejudice in order to permit Dorward to replead after the municipal criminal prosecution is concluded and any appeals are exhausted, if he has adequate grounds to do so, e.g., to preserve evidence for use in the instant action.  *Cf. Cain v. Jackson*, 2008 WL 2717185, at *1 (N.D. Tex. July 10, 2008) (Fitzwater, C.J.) (order) (dismissing case without prejudice based on *Younger* abstention in order to permit refiling after state cases concluded).

C

In count three, Dorward alleges violation of his constitutional right to equal protection. This claim is based on his contention that there are a number of other similarly situated properties where defendants did not attempt enforcement of the City's nuisance ordinances by abatement or prosecution of the owners. He further avers: "By singling out Dorward for prosecution and abatement, Ramirez and the City have denied Dorward equal protection of the law guaranteed to him by the Fourteenth Amendment to the Constitution." Compl. ¶ 49.

1

Defendants initially contend that Dorward cannot maintain this claim against the City because he has not adequately pleaded its liability under *Monell*. They also argue that the claim must be dismissed as to all defendants because it asserts a selective enforcement or prosecution theory but fails to allege any improper motivation, e.g., racial or other discriminatory animus. Citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), Dorward responds that his equal protection claim is viable because he is alleging that defendants lacked a rational basis for treating him differently from other similarly situated landowners. He also argues that "discovery will disclose" that defendants were "motivated by an animus against him" based on his ethnicity or assertion of an unpopular political opinion. P. Br. 14-15.

- 22 -

2

The court concludes that Dorward's equal protection claim is not viable against defendants.   Assuming *arguendo* that Dorward could satisfy *Monell* as to this claim, his failure to allege any improper motivation for defendants' alleged selective enforcement and prosecution is still fatal to the claim.   In traditional equal protection claims, a § 1983 plaintiff must show that "a state actor intentionally discriminated against [him] because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (internal quotation marks omitted).   "[S]uccessful equal protection claims," however, may be "brought by a 'class of one' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook*, 528 U.S. at 564.   A "class of one" claim based on irrational, differential treatment "requires a plaintiff to show standards were applied differently to him than to others similarly situated." *Nance v. New Orleans & Baton Rouge Steamship Pilots' Ass'n*, 174 Fed. Appx. 849, 854 (5th Cir. 2006) (emphasis omitted); *see also Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 386-87 (5th Cir. 2008) (involving denial of used-car dealer license and allegation that licenses were granted to similarly situated applicants, and concluding that claim could proceed on theory that "no rational basis exist[ed] for the disparate treatment"); *Mikesa*

*v. City of Galveston*, 451 F.3d 376, 381 (5th Cir. 2006) ("To bring
. . . an equal protection claim for the denial of zoning permits,
the appellant must show that the difference in treatment with
others similarly situated was irrational." (footnote omitted));
*Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000)
(involving denial of building permit, and requiring plaintiff to
show "that the defendants applied the zoning standards . . .
unreasonably in his case").   The Fifth Circuit has explicitly
distinguished equal protection claims that involve irrational,
differential application of neutral standards from those that are
"premised on selective enforcement or prosecution." *Lindquist*, 525
F.3d at 387 n.2; *see also Bryan*, 213 F.3d at 277.   In so doing, the
court reaffirmed the "well-established rule" that selective
enforcement or prosecution claims require the plaintiff to
demonstrate more than the mere absence of a rational basis for the
differential treatment.   *Id.*   Viable selective enforcement or
prosecution claims require "a showing of improper motive."   *Id.*
This rule is grounded on the rationale that the "conscious exercise
of some selectivity in enforcement is not in itself a federal
constitutional violation."   *Alldred's Produce v. U.S. Dep't of
Agric.*, 178 F.3d 743, 748 (5th Cir. 1999) (internal quotation marks
omitted) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).
Selectivity in enforcement or prosecution may sometimes be the
result merely of a lack of adequate resources to deal with all

- 24 -

lawbreakers or a concentrated effort to allocate scarce resources to the most egregious violations. *See Esmail v. Macrane*, 53 F.3d 176, 178-79 (7th Cir. 1995). Therefore, in a selective enforcement or prosecution case, a § 1983 plaintiff "must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan*, 213 F.3d at 277.

Here, Dorward merely avers that he was "singl[ed] out" as a target of the City's nuisance abatement and prosecution efforts. Compl. ¶ 49. He does not *allege* (as opposed to argue in his response brief) that defendants singled him out for any impermissible reason. Although Dorward cites *Village of Willowbrook* and its "no rational basis" standard in his briefing, his claim is not governed by this standard. Rather, as he also acknowledges in his response brief, he alleges a theory of selective enforcement and "selective prosecution." P. Br. 14. The gravamen of his equal protection claim is that defendants chose to enforce the City's nuisance laws against him and prosecute him while failing to act against landowners who maintained similar nuisances. Therefore, to state a claim against defendants, Dorward must allege that they were motivated by an impermissible consideration. Because he has failed to do so, the court dismisses this claim.

If he has an adequate basis to do so, the court will permit

Dorward to replead an equal protection claim that alleges the existence of an impermissible criterion, such as race, ethnicity, or exercise of a constitutional right.

IV

The court now turns to the merits of Dorward's state-law claims against defendants.

A

In the fifth count of his complaint,[10] a claim for improper use of a search warrant, Dorward asserts that "[a] governmental agency may not make use of an *ex parte* search warrant to obtain evidence in order to support an existing prosecution." Compl. ¶ 58.  He avers that Officer Ramirez impermissibly obtained an *ex parte* search warrant that authorized defendants to enter and remove from the Lot certain items that could be relevant evidence in the municipal prosecution.  Defendants move to dismiss this claim on the basis that it does not correspond to any cause of action under federal or state law.  Dorward responds that Officer Ramirez violated "many" provisions of the Texas CCP relating to the use of search warrants.  P. Br. 15.  He asserts that "[c]ertainly, an abuse of the statutory procedure violates the Constitution and serves as a basis for suit under section 1983." *Id.*  The court disagrees.

_____

[10]As indicated above, count four of Dorward's complaint simply asserts that the City can be liable for its employees' actions; it does not set forth a separate cause of action.

It is well settled that to maintain a claim under § 1983, a plaintiff must assert the violation of a right conferred by the United States Constitution or a federal statute, not merely the violation of state law. *See, e.g., Mikesa*, 451 F.3d at 381 ("[A] plaintiff [may not] bootstrap violations of state law into the Constitution."); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) ("A claim for relief under § 1983 must allege the deprivation of a right secured by the Constitution or the laws of the United States by a defendant acting under color of state law.").  And the fact that state law may provide for heightened procedural protections in a given area does not give rise to a federal cause of action for violation of those procedures. *See Fields v. City of S. Houston, Tex.*, 922 F.2d 1183, 1189 (5th Cir. 1991) ("Section 1983 is a federally created cause of action to redress civil rights violations.  The states are free to impose greater restrictions[,] . . . but their citizens do not thereby acquire a greater federal right." (internal quotation marks omitted).  Therefore, even assuming *arguendo* that Officer Ramirez violated certain provisions of the Texas CCP, this cannot serve as the basis for a § 1983 claim.  Accordingly, the court dismisses with prejudice the claim alleged in count five of Dorward's complaint.  The court is not granting Dorward leave to replead this claim because it can discern no basis for Dorward to do so. *See supra* note 6 (noting that court will not grant leave to amend when "it is clear that the defect[ ]

[is] incurable"). Search warrants are routinely obtained *ex parte*, even after a person has been arrested or charged with a crime.

B

In count six, Dorward asserts that defendants violated § 93.16 of the City Code[11] when they failed to give him notice that he was

---

[11]As quoted in the complaint, this section provides:

> (A) The owner of a lot described in § 93.15 where stagnant water may accumulate and which is not properly drained, or the owner of any premises or building upon which carrion, filth or other impure, overgrown or unwholesome matter may be, shall be notified to drain or fill the lot, or remove the filth, carrion, or other impure, overgrown or unwholesome matter and otherwise abate the nuisance within ten days. The notice shall be delivered to the owner in writing or by letter addressed to the owner at the last know[n] post office address . . . . If the owner shall fail to abate the nuisance within the ten days of notice of a violation, the [City] may do such filling or draining or removal of filth, carrion or other impure or unwholesome matter and otherwise abate the nuisance or cause it to be done . . . .
>
> (B) The [City,] in the notice of a violation, may inform the owner by certified mail, return receipt requested, that if the owner commits another violation of the same kind or nature that poses a danger to the public health and safety on or before the first one year anniversary of the date of the notice, may correct the violation at the owner's expense. . . . If the violation covered by a notice under this section occurs within such one-year period and the [City] has not been informed in writing by the owner of an ownership change, then the [City,] without notice, may take any action permitted by section (A) of this section and § 83.17 . . . .

maintaining an illegal nuisance on the Lot and that, if he committed another violation within one year, the City could abate the nuisance at his expense. Defendants contend that Dorward cannot maintain this claim against the City because it is entitled to governmental immunity. They also argue that Dorward cannot sue under this section because it does not provide a private right of action. Dorward responds that he suffered injury due to the violation of this section and contends generally that causes of action may be implied, relying on cases that recognize implied causes of action in various federal statutes.

In Texas, sovereign immunity generally defeats a court's subject matter jurisdiction over a suit against the State unless the Texas Legislature has waived immunity. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts." *Id.* (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). Dorward has identified no state statute or City ordinance that waives the City's governmental immunity simply because it has violated the terms of one of its own ordinances. Nor can the court discern from § 93.16 of the City Code any intent to waive immunity. Accordingly, the court concludes that count six must be dismissed against the City based

Compl. ¶ 62 (quoting § 93.16 of the City Code).

on governmental immunity.

The court also holds that Dorward cannot sue under § 93.16, and it therefore dismisses the claim as to the individual defendants.  Even a cursory reading of this section indicates that it does not expressly provide a private right of action.   Thus Dorward can sue under this section only if there is an implied cause of action.   Contrary to Dorward's assertion, Texas law, not federal law, governs whether the court may imply a cause of action under the City Code.   Under Texas law, "municipal ordinances are interpreted by the same rules of construction that apply to statutes."  *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002).   "When a private cause of action is alleged to derive from a constitutional or statutory provision, [the court's] duty is to ascertain the drafters' intent."  *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004); *see also City of Dallas v. Blanton*, 200 S.W.3d 266, 277 (Tex. App. 2006, no pet.) ("[The court's] primary duty is to carry out the intentions of the municipality's legislative body.") (citing *Bolton v. Sparks*, 362 S.W.2d 946, 951 (Tex. 1962)).   Under this "rule of strict construction," a private right of action will not be implied merely because "a legislative enforcement scheme fails to adequately protect intended beneficiaries."  *Brown*, 156 S.W.3d at 567.  "The fact that a person has suffered harm from the violation of a statute does not automatically give rise to a private cause of

action in favor of that person." *Witkowski v. Brian, Fooshee & Yonge Props.*, 181 S.W.3d 825, 831 (Tex. App. 2005, no pet.).

The court concludes that § 93.16 does not confer an implied private right of action. The court cannot discern from this section any intent to provide such a right. Instead, § 93.16 appears only to establish a procedure for the abatement of certain kinds of nuisances by permitting the owner or the City, if necessary, to rectify the problem. Even assuming *arguendo* that Dorward was injured by a failure to receive adequate notice under § 93.16, this does not provide a basis to imply a private right of action. Were the court to do so, it would impermissibly enlarge the scope of that section. The court therefore dismisses count six with prejudice as to the individual defendants, and without a right to replead.

C

In count seven, Dorward seeks declaratory relief. Specifically, he alleges that the City billed him the sum of $2,495.40 "even though it had not complied with all provisions of the Cockrell Hill Code." Compl. ¶ 72. He requests a declaration that he is not obligated to pay this charge. Defendants maintain that the court should abstain under *Younger* from exercising jurisdiction over this claim. The court disagrees.

1

As explained above, one of the prerequisites for *Younger* abstention is that the plaintiff must have an "adequate opportunity" to raise the claim in the pending state proceeding. *See Middlesex County Ethics Commn.,* 457 U.S. at 432.   Unlike Dorward's due process claim seeking injunctive relief, this claim for declaratory relief relates to an issue that appears to be at best peripheral to his pending municipal court criminal prosecution.   Because it is not apparent from the pleadings alone that he would have an opportunity to seek this relief in the municipal court proceeding, the court should not abstain.   *Cf. Ballard*, 856 F.2d at 1571-72 ("[E]ven when *Younger* abstention is required, a federal district court has no discretion to dismiss cognizable claims for monetary relief which cannot be redressed in a pending state proceeding.") (citing *Deakins v. Monaghan*, 484 U.S. 193 (1988)).

2

The court also concludes, however, that this claim should be dismissed on a different ground.   The federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, does not create a substantive cause of action.   *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act . . . is procedural only[.]") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671

(1950)).   A declaratory judgment action is merely a vehicle that allows a party to obtain an "early adjudication of an actual controversy" arising under other substantive law.  *Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990).   Federal courts have broad discretion to grant or refuse declaratory judgment.  *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991).   "Since its inception, the [DJA] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).   The DJA is "an authorization, not a command."  *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).   It gives federal courts the competence to declare rights, but it does not impose a duty to do so.  *Id.*

Here, Dorward appears to base his right to declaratory relief on the City's failure to comply with "all provisions of the [City Code]."  Compl. ¶ 72.   Although Dorward does not specify in this claim the City Code provisions allegedly violated, he is probably referring to the allegation in the immediately preceding claim, i.e., that the City violated City Code § 93.16 by failing to provide him adequate notice.   As discussed above, the City is immune from being sued under this section, and Dorward has no private right of action against the individual defendants.   The court therefore declines in its discretion to consider a DJA claim

that Dorward cannot bring directly and that would essentially look retrospectively at conduct that has already occurred rather than allow Dorward to obtain an "early adjudication of an actual controversy." The court therefore dismisses count seven *sua sponte*.

A federal district court has the authority to consider the sufficiency of a complaint and "dismiss an action on its own motion 'as long as the procedure employed is fair.'" *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1988)); *see also Coates v. Heartland Wireless Commnc'ns, Inc.*, 55 F.Supp.2d 628, 633 (N.D. Tex. 1999) (Fitzwater, J.); *Foreman v. Dallas County, Tex.*, 990 F. Supp. 505, 510 (N.D. Tex.1998) (Fitzwater, J.) (three-judge court); 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 409 (3d ed. 2004) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties."). In this case, the court is granting Dorward leave to amend, and he can attempt to cure this deficiency by identifying a City Code provision under which he has a right to sue for the requested declaratory relief and as to which the City is not entitled to immunity. If he concludes that he cannot cure this defect by amendment, then to ensure that the

procedure is fair, the court will allow him 30 days from the date this memorandum opinion and order is filed to submit a brief that sets out his opposition to dismissing count seven on this basis.[12]

D

In counts eight through twelve, fourteen, and sixteen, Dorward asserts several tort claims. Specifically, he alleges abuse of process, conversion, trespass to real property, trespass to personal property, theft under the TTLA, negligence, and civil conspiracy. Defendants contend that all of these claims must be dismissed against the City, based on governmental immunity, and against the individual defendants, based on Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) (Vernon 2005). The court agrees.

1

The Texas Tort Claims Act ("TTCA") provides a limited waiver of sovereign and governmental immunity for certain tort claims, "allowing suits to be brought against governmental units only in certain, narrowly defined circumstances." *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). The TTCA's waiver of immunity constitutes the "only . . . avenue for

_____

[12]Additionally, to the extent Dorward brings this claim under the Texas Declaratory Judgments Act ("TDJA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (Vernon 2008), the court concludes that he cannot, because the TDJA "does not apply in this court." *Xtria LLC v. Tracking Sys., Inc.*, 2007 WL 1791252, at *2 & n.2 (N.D. Tex. June 21, 2007)(Fitzwater, J.), *appeal docketed*, No. 08-11123 (5th Cir. Nov. 26, 2008). If Dorward disagrees, he can include in his brief those arguments that he maintains support the conclusion that he can bring a claim under the TDJA.

common-law recovery against the government" on a tort theory. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).

The TTCA also contains an "election of remedies" provision that is designed to require "a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the [TTCA] or proceeding against the employee alone." *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 657 (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.106). "Because the decision regarding whom to sue has irrevocable consequences, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually." *Id.* "Although recognized as a harsh grant of immunity, [§ 101.106] serves the purpose of protecting government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers." *Jackson v. Dallas Indep. Sch. Dist.*, 1999 WL 58846, at *5 (N.D. Tex. Feb. 1, 1999) (Fitzwater, J.) (internal quotation marks omitted), *aff'd*, 232 F.3d 210 (5th Cir. Aug. 23, 2000) (table) (per curiam). Thus it "narrows the issues for trial and reduces delay and duplicative litigation costs." *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 657. Under § 101.106(e), "[i]f a suit is filed under [the TTCA] against both a governmental unit and any of its employees, the employees shall immediately be

dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e).  For purposes of § 101.106(e), "all tort theories alleged against a governmental unit" are assumed to be "under [the TTCA]." *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 659.

2

The court first addresses together all of Dorward's intentional tort claims except the civil conspiracy claim.  The TTCA expressly excludes intentional torts from any waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort[.]"). Accordingly, Dorward's claims against the City for abuse of process, conversion, trespass to real property, trespass to personal property, and theft under the TTLA are dismissed with prejudice based on governmental immunity. *See Blackstock v. Tatum*, 396 S.W.2d 463, 467-68 (Tex. App. 1965, no writ) (abuse of process intentional tort); *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 361 (Tex. App. 2008, no pet.) (conversion intentional tort); *Harris County v. Cypress Forest Pub. Util. Dist. of Harris County*, 50 S.W.3d 551, 553-54 (Tex. App. 2001, no pet.) (trespass intentional tort); *Minix v. Gonzales*, 162 S.W.3d 635, 639 (Tex. App. 2005, no pet.) (TTLA claim intentional tort).

Moreover, as to these claims, the court rejects as meritless

Dorward's assertion that the City is not entitled to governmental immunity because Dorward has also brought claims against the City under § 1983.    Although municipalities are not entitled to governmental immunity for claims arising under § 1983, *see Owen v. City of Independence, Mo.*, 445 U.S. 622, 647-48 (1980), the mere fact that Dorward has asserted § 1983 claims arising out of the same set of facts as his state-law abuse of process, conversion, trespass, and TTLA claims does not somehow transform them into § 1983 claims.   They are separate and distinct claims arising under state law, and, as such, are barred by the City's governmental immunity.

Further, pursuant to § 101.106(e), these claims must also be dismissed with prejudice as to the individual defendants because Dorward alleges that each is a City employee and, in the instant motion, the City seeks dismissal of the claims against them.

3

The court next considers the civil conspiracy claim.   Dorward alleges that "Ramirez, Carrillo, Sellers, Doe, Roe, the City and Waste Management had as an object to be accomplished the removal from the Lot and the disposal of Dorward's plants and bulbs," Compl. ¶ 125, and "had an agreement" concerning this object, *id.* at ¶ 126.   He also asserts that they engaged in several overt acts, including arranging for the dumpster, cutting through the fence surrounding the Lot, and removing plants and other items from the

Lot and placing them in the dumpster.  *Id.* at ¶ 127.

Defendants maintain that, like his other intentional tort claims, Dorward's civil conspiracy claim must be dismissed as to the City based on governmental immunity and as to the individual defendants based on § 101.106(e).  Dorward responds that the nature of his conspiracy claim is a conspiracy to violate § 1983 and that as such, it is actionable and not precluded by the defense of governmental immunity.

Initially, for the reasons discussed above, the court concludes that to the extent that Dorward's civil conspiracy claim arises under state law, it is barred by governmental immunity as to the City and by § 101.106(e) as to the individual defendants. Civil conspiracy is an intentional tort under Texas law.  *See Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996).

The court next considers whether Dorward has adequately pleaded a conspiracy claim arising under § 1983.  A plaintiff may maintain under § 1983 a claim of conspiracy to deprive him of constitutional rights.  *See Bullard v. City of Houston*, 95 F.3d 48, at *4 (5th Cir. 1996) (per curiam) (unpublished table decision); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992).  "In order to prevail on a [§ 1983] conspiracy claim, a plaintiff must establish (1) the existence of

a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel*, 918 F.2d at 1187; *see also Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (explaining that § 1983 conspiracy claim is "the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but a conspiracy claim is not actionable without an actual violation of section 1983" (internal quotation marks omitted)). To show the existence of a conspiracy, a plaintiff must demonstrate that the defendants entered into an agreement to deprive him of civil rights. *See Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("To prove a [§ 1983] conspiracy, a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy." (internal quotation marks and alteration omitted)); *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) ("To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act."). And "[m]ere conclusory allegations of conspiracy cannot, absent reference to material facts" state a viable claim of conspiracy under § 1983. *Id.*

Although Dorward argues in his response brief that his civil conspiracy claim is viable because it is brought under § 1983, he

does not allege with adequate specificity in his complaint, or identify in his briefing, any constitutional right that he maintains defendants conspired to violate. Because the court has dismissed his equal protection claim, any related conspiracy claim must also fail in the absence of an adequately pleaded violation of a substantive right for which § 1983 provides a remedy. The question thus becomes whether Dorward has adequately pleaded a conspiracy under § 1983 to violate his constitutional right of due process.

As discussed above, the gravamen of Dorward's due process claim is that, without giving him prior notice or an adequate hearing, defendants entered the Lot and removed plants and other items belonging to him. But his civil conspiracy claim contains no allegation that defendants agreed to deprive him of notice or an adequate hearing. The focus of his conspiracy claim is on defendants' alleged agreement and cooperation in removing his possessions from the Lot and placing them in a dumpster—not any failure to provide due process before doing so. Accordingly, Dorward has not sufficiently alleged a § 1983 conspiracy claim.

Because governmental immunity and § 101.106(e) bar Dorward's civil conspiracy claim to the extent that it arises under state law, and because Dorward has not adequately pleaded a § 1983 conspiracy claim, the court dismisses Dorward's civil conspiracy claim. The court grants Dorward leave to replead a § 1983

conspiracy claim, however, if he has adequate grounds to do so.

4

The court turns next to Dorward's negligence claim.  Dorward
alleges that

> [i]n entering the Lot and removing items from
> the Lot, Ramirez, Carrillo, Doe, Roe, and the
> City acted without due care and caused damage
> to pecan, burr oak, red oak, and crepe myrtle
> trees located on the Lot, damaged and
> destroyed pavestone and brick pathways,
> landscape timbers, an underground sprinkler
> system, pots, topsoil, and one of two (2) in-
> ground ponds and killed goldfish.

Compl. ¶ 112.  He avers that "[i]n damaging the burr oak tree,
Ramirez directed Doe repeatedly to ram the burr oak tree[.]"  *Id.*
at ¶ 26.

As discussed above, Dorward cannot maintain this claim against
the City unless it falls within a waiver of governmental immunity.
The TTCA waives immunity from liability for property damage
"proximately caused" by the negligence of an employee acting within
the scope of employment if it "arises from the operation or use of
a motor-driven vehicle or motor-driven equipment" and "the employee
would be personally liable to the claimant according to Texas law."
Tex Civ. Prac. & Rem. Code Ann. § 101.021(1).  Defendants contend
that Dorward's negligence claim does not fall within the TTCA's
limited waiver of immunity because the damage he allegedly suffered
was not caused by the negligent use of a motor-driven vehicle or
piece of equipment and because he explicitly avers that at least

some of the damage was caused intentionally.  Dorward argues that his negligence claim is viable because he has alleged that defendants used a tractor with a front-end loader and backhoe attached, which clearly is motor-driven equipment.

The court concludes that Dorward has not alleged a negligence claim that falls within the TTCA's waiver of immunity.  Initially, the court observes that the gravamen of Dorward's complaint appears to be that defendants took intentional action against him——e.g., entering the Lot, unearthing plants and removing other items, and placing them in a dumpster——in a putative effort to enforce the City's nuisance ordinances.  And, as defendants point out, Dorward clearly alleges that Officer Ramirez and Doe intentionally injured one of his trees.  Although the general intentional nature of Dorward's allegations does not preclude the possibility that defendants acted negligently in some respect and thereby damaged his property (e.g., in harming the pecan, red oak, or crepe myrtle trees), Dorward still does not adequately allege that defendants' negligence pertained to the use of a motor-driven vehicle or piece of equipment.  *See LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) (holding that waiver of immunity for liability for property damage is a "limited one," and that it must be governmental employee's negligent use or operation of motor-driven vehicle or piece of equipment that caused the damage).  In the factual background section of his complaint, Dorward merely

- 43 -

avers that defendants "brought in a tractor with a front end loader and backhoe to the Lot," Compl. ¶ 24, but he does not allege that defendants injured him through the negligent use or operation of the tractor.  His allegation that defendants acted "without due care" is conclusory and does not indicate in what specific respect defendants were negligent besides in the general activity of "entering the Lot and removing items from the Lot."  *Id.* at ¶ 112. And, given that the core of Dorward's complaint appears to be based on intentional conduct, the court cannot reasonably infer that it was the negligent, as opposed to intentional, use of the tractor that caused Dorward's alleged damages.  Because Dorward's negligence claim therefore falls outside the TTCA's limited waiver of governmental immunity for property damage caused by an employee's negligence, the court dismisses the claim as to the City.  If he has adequate grounds to do so, Dorward may replead a negligence claim against the City based on the use or operation of the tractor.  Pursuant to § 101.106(e), however, the court dismisses with prejudice the negligence claim as to the individual defendants.

E

In count thirteen, Dorward alleges that defendants breached duties owed to him arising out of a bailment relationship. Specifically, he avers that the warrant pursuant to which defendants entered his property putatively authorized the removal

only of particular items deemed to violate a City ordinance (e.g., overgrown or other impure or unwholesome matter) and "only for the limited, specific purpose" of taking possession of them and carrying them before the magistrate, Compl. ¶ 105; that "[b]y accepting delivery of items removed from the Lot," defendants "entered [into] either an express and/or implied agreement to safeguard the items and to carry them before the magistrate and thereafter to return the items to Dorward," *id.* at ¶ 107; that defendants failed to exercise due care to remove only the items falling within the terms of the search warrant and to preserve other items, *id.* at ¶ 108; and that defendants failed to inventory and/or safeguard the removed items and carry them before the magistrate, *id.*

1

Defendants maintain that Dorward's bailment claim sounds in breach of contract and is barred by the City's governmental immunity because it does not fall within the limited waiver of immunity for breach of contract claims found in § 271.152 of the Texas Local Government Code.  Further, they contend that the bailment claim must be dismissed as to all the defendants because Dorward has not adequately pleaded the existence of a bailment relationship.  They argue that an essential component of a bailment relationship is an agreement with respect to the bailed property, and that Dorward not only failed to agree to defendants' taking

possession of his property, he objected to it.

Dorward responds that bailment claims may be grounded on a theory either of breach of contract or of negligence. According to Dorward, because he is relying "in part on a negligence theory (under section 1983)," P. Br. 23, the City's governmental immunity defense fails. He also appears to argue that, under a breach of contract theory, the search warrant constitutes the requisite agreement and falls within § 271.152's waiver of immunity.

2

The court considers first the City's governmental immunity defense. For the reasons discussed above, the City is entitled to governmental immunity on Dorward's bailment claim unless it has been waived. Section 271.152 waives immunity for liability on certain breach of contract claims. It provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Local Gov. Code Ann. § 271.152 (Vernon 2005). A "contract subject to this subchapter," in turn, is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2). Dorward has not alleged that he entered into a

- 46 -

written contract of this nature with defendants. Contrary to Dorward's suggestion, the search warrant cannot constitute the requisite agreement. By its nature, a warrant is the antithesis of an agreement: it permits authorized persons to search and seize property *without* the owner's consent. Moreover, Dorward stresses in his complaint (and bases his fifth count on the allegation) that the search warrant in this case was obtained *ex parte*, i.e., without his knowledge or consent. Therefore, Dorward's bailment claim does not fall within § 271.152's waiver of immunity.

Nor does it fall within the TTCA's limited waiver of immunity for negligence claims. As in his separate negligence claim, Dorward fails in his bailment claim to allege that defendants were negligent with respect to the use or operation of a motor-driven vehicle or piece of equipment. Moreover, the court rejects Dorward's contention that the City is not entitled to governmental immunity because his bailment claim rests in part on a negligence theory "under § 1983." Negligence is a state-law theory of liability, and, as discussed above, the fact that Dorward has also asserted § 1983 claims does not transform his separate and distinct state-law claims into § 1983 claims. Accordingly, the court concludes that Dorward's bailment claim is barred against the City on the ground of governmental immunity.

3

Further, the court concludes that Dorward cannot maintain his bailment claim against either the City (assuming *arguendo* that it is not entitled to governmental immunity) or the individual defendants because he has not adequately pleaded the existence of an agreement that gives rise to a bailment relationship. Under Texas law, "bailment" is not a "specific cause of action," but a bailee may be held liable under principles of tort or breach of contract. *W.E. Stephens Mfg. Co. v. Goldberg*, 225 S.W.3d 77, 81 (Tex. App. 2005, pet. denied). For a bailment relationship to exist in the first instance, however, "there must generally be (1) a contract, either express or implied, (2) delivery of property to the bailee, and (3) acceptance of the property by the bailee." *Russell v. Am. Real Estate Corp.*, 89 S.W.3d 204, 210 (Tex. App. 2002, no pet.). A bailment relationship may be implied "if proof of sufficient circumstances show the implied relationship of bailor and bailee rests upon a substantive foundation," and, in such a case, "delivery and acceptance [need not] be formal." *Id.* at 210-11. The duties of a bailee include exercising due care over the bailed property and returning it at the appropriate time to the bailor. *See Smith v. Radam, Inc.*, 51 S.W.3d 413, 418 (Tex. App. 2001, no pet.).

According to the complaint, because defendants "accept[ed] delivery of items removed from the Lot," Compl. ¶ 107, they thereby

entered into an agreement essentially to abide by the terms of the warrant, e.g., to carry the removed items before the magistrate and to return the items safely to Dorward.  But there is no allegation of any express or implied agreement by which Dorward offered his property to defendants and they accepted it.  And as explained above, the search warrant cannot constitute such an agreement.  To the contrary, Dorward's complaint only supports the conclusion that defendants removed items from his garden *without* his consent.  *See id.* at ¶ 24 (alleging that Officers Ramirez and Carrillo "cut through a fence that surrounded the Lot"); *id.* at ¶ 28 (alleging that when Dorward approached the Lot "Carrillo displayed a firearm in order to assure that Dorward did not enter the Lot or attempt to preserve items removed from the Lot"); *see also* P. Br. 21 ("There is and cannot be that Dorward gave any consent to the appropriation of his property.").  Therefore, Dorward's contention amounts to the proposition that whenever law enforcement officers seize property pursuant to a putatively valid warrant, they necessarily enter into an implied bailment relationship with the owner and become subject to civil liability if they do not comply with the terms of the warrant or safeguard and return the seized property.  Dorward cites no authority to support this broad proposition, and the sparse caselaw relevant to the issue suggests otherwise.  *See Lair v. Horn*, 2002 WL 34249735, at *2 (Tex. App. 2002, pet. denied) (holding that no implied bailment relationship was created where

- 49 -

officer seized plaintiff's property in connection with arrest); *Lopez v. City of Dallas*, 696 F. Supp. 240, 246 (N.D. Tex. 1988) (Maloney, J.) (holding same) ("[N]o contract was formed between Plaintiff and the law enforcement officers. There was no offer by Plaintiff of the property taken with the understanding that it would be returned."). Accordingly, the court dismisses with prejudice Dorward's bailment claim, and without leave to replead.

F

In count fifteen, Dorward avers that defendants have violated, and are preparing to violate, various provisions of the Texas CCP. Specifically, he points to certain provisions that require a peace officer who executes a warrant to present the owner with a written, signed inventory of the items seized, carry the items seized before the magistrate, and retain custody of them until the magistrate issues an order for their safekeeping. *See* Tex. Code Crim. Proc. Ann. §§ 18.06, 18.09, 18.10 (Vernon 2005 and Supp. 2008). In connection with this claim, Dorward seeks injunctive relief essentially identical to that requested in his second count: requiring defendants to maintain custody and control of the items removed from the Lot and placed in a dumpster and to prevent damage to, disposal, or loss of them. As with Dorward's second claim, the parties dispute whether *Younger* abstention is required. For the reasons discussed in its analysis regarding Dorward's second count, *see supra* § III(B)(2), the court abstains under *Younger* from

- 50 -

exercising jurisdiction over count fifteen and dismisses it without prejudice.   The court will permit Dorward to replead this claim after the pending municipal prosecution is concluded and any appeals are exhausted, if he has adequate grounds to do so.

G

In count seventeen, Dorward alleges that defendants acted "either with malice or with gross negligence" and seeks on that ground to recover exemplary damages.   Compl. ¶ 131.   Defendants maintain that Dorward cannot recover exemplary damages against the City under either § 1983 or pertinent state law, and they seek the dismissal of this claim against the City.   The court agrees.

It is well settled that municipalities are not subject to liability for punitive damages under § 1983.   *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).   Therefore, the court dismisses with prejudice Dorward's request for punitive damages against the City as to his § 1983 claims.   Additionally, the TTCA does not authorize the recovery of exemplary damages against governmental entities on claims brought under that statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.024 (Vernon 2005). Accordingly, the court dismisses with prejudice Dorward's claim for exemplary damages against the City.

H

In count eighteen, Dorward seeks attorney's fees.   Defendants contend that Dorward cannot recover attorney's fees against the

City because of its governmental immunity.  Dorward responds that attorney's fees are authorized under 42 U.S.C. § 1988 as to his § 1983 claims.  The court agrees.  That statute provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in any action to enforce § 1983.  42 U.S.C. § 1988. Accordingly, the court declines to dismiss Dorward's request for attorney's fees as to his § 1983 claims.

The court dismisses with prejudice, however, Dorward's claim for attorney's fees against defendants based on his state-law claims.  The only state-law claims that the court is allowing Dorward to replead are count fourteen (negligence) and count fifteen (violation of the Texas CCP).  "Attorney's fees are not recoverable in a negligence suit."  *Transcon. Ins. Co. v. Crump*, 274 S.W.3d 86, 102 (Tex. App. 2008, pet. filed) (citing *New Amsterdam Cas. Co. v. Tex. Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967)).  And the court is unaware of any authority under the Texas CCP for awarding attorney's fees, even assuming that there is a private right of action.  *See Moreno v. Curry*, 2006 WL 3207984, at *2 (N.D. Tex. Nov. 7, 2006) (Means, J.) ("Neither does [plaintiff's] invocation of several provisions of the Texas Code of Criminal Procedure afford him any relief, and any claims thereunder must be dismissed." (footnote omitted) (citing *Cort v. Ash*, 422 U.S. 66, 79 (1975), for proposition that no private right of action

exists under criminal statutes unless there is clear statutory basis for inferring one)).

V

The court now turns to Waste Management's Rule 12(c) motion for judgment on the pleadings.

Rule 12(c) provides that "[a]fter the pleadings are closed——but early enough not to delay trial——a party may move for judgment on the pleadings." "'A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)). When analyzing such a claim, "'[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.'" *Id.* (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). A district court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam). The court evaluates the complaint in the light most favorable to the plaintiff and accepts "all well-pleaded facts as

- 53 -

true[.]"   *Id.*   The court will not, however, "'accept as true conclusory allegations or unwarranted deductions of fact.'"   *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).   "'The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.'"   *Great Plains Trust Co.*, 313 F.3d at 313 (quoting *Jones*, 188 F.3d at 324).   "'Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint.'"   *Id.*

VI

As an initial matter, Dorward argues that Rule 12(c) procedurally bars Waste Management's motion because (1) the pleadings have not "closed," and (2) Waste Management's answer, which effectively denies the balance of the allegations contained in Dorward's complaint, demonstrates that there are material facts at issue that "preclude[ ] granting of a motion for judgment on the pleadings." P. Br. 9-10.   The court disagrees.

Dorward is mistaken in asserting that, because the deadline to move for leave to amend the pleadings does not expire under the scheduling order until September 1, 2009, the pleadings are not "closed" within the meaning of Rule 12(c).

– 54 –

> Rule 7(a) provides that the pleadings are
> closed upon the filing of a complaint and an
> answer (absent a court-ordered reply), unless
> a counterclaim, cross-claim, or third-party
> claim is interposed, in which event the filing
> of a reply to a counterclaim, cross-claim
> answer, or third-party answer normally will
> mark the close of the pleadings.

5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 213 (3d ed. 2004) (footnotes omitted). Dorward filed his complaint on January 19, 2009, and Waste Management filed its answer on February 2, 2009. Therefore, when Waste Management filed its Rule 12(c) motion on May 1, 2009, the pleadings were "closed" within the meaning of Rule 12(c). "The fact that under the court's scheduling order there is still time for a party to move for leave to amend does not affect this reasoning." *Nortel Networks Ltd. v. Kyocera Wireless Corp.*, 2002 WL 31114077, at *1 n. 1 (N.D. Tex. Sept. 20, 2002) (Fitzwater, J.).

The court also disagrees that Waste Management's answer precludes its motion for judgment.[13] Under such a premise, unless a defendant admitted every factual allegation contained in the complaint, it could not prevail on a Rule 12(c) motion. This is not the Rule 12(c) standard. The standard for deciding a Rule 12(c) motion is the same as the Rule 12(b)(6) standard. *Great Plains Trust Co.,* 313 F.3d at 313 n.8 ("Rule 12(b)(6) decisions

---

[13]For the most part, Waste Management's answer pleads that Waste Management lacks knowledge and information sufficient to form a belief as to the truth of the allegations asserted in Dorward's complaint.

appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same."). Regardless whether the defendant denies the plaintiff's factual allegations in the answer, a district court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones*, 188 F.3d at 324; *see also Great Plains Trust Co.,* 313 F.3d at 328 (holding that plaintiffs misunderstood the nature of defendants' Rule 12(c) motion by arguing that a fact issue precluded dismissal).

VII

A

The court first addresses Dorward's claim in count two for anticipatory violation of § 1983.

As explained *supra* in § III(B), Dorward alleges an impending violation of his due process rights through spoliation of evidence. He seeks injunctive relief that prevents Waste Management from destroying or disposing of the items in the dumpster. Waste Management contends that the court lacks subject matter jurisdiction over this claim because it is not ripe, and, if the claim is ripe, that the claim fails because there are no allegations that Waste Management took any deliberate action to cause Dorward to be deprived of due process.

For the reasons discussed *supra* at § III(B), the court

concludes that, although count two is ripe, it should decline to exercise jurisdiction over the claim based on the *Younger* doctrine.[14]   Accordingly, the court dismisses the claim without prejudice in order to permit Dorward to replead after the municipal criminal prosecution is concluded and any appeals are exhausted, if he has adequate grounds to do so, e.g., to preserve evidence for use in the instant action.  *Cf. Cain*, 2008 WL 2717185, at *1.

B

In count nine, Dorward alleges that Waste Management, together with defendants, wrongfully converted his property.   Waste Management contends that it undertook no act either to deprive Dorward of his property or to exercise unlawful dominion or control over Dorward's property simply by providing, per its contractual obligations, a dumpster to the City.   The court agrees.

Dorward's conversion claim is based upon defendants' removal of his property, purportedly pursuant to a search warrant.   Waste Management's only alleged involvement is providing a dumpster to the City and failing to remove Dorward's property from the dumpster, return it to its place on the Lot, and restore it to its original condition.   The elements of a conversion cause of action

---

[14]Although Waste Management did not argue for dismissal based on the *Younger* doctrine, the court can raise *Younger* abstention *sua sponte*.  *See Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 n.1 (5th Cir. 1999) ("[A]bstention may be raised by the court *sua sponte*."); *Squire v. Coughlan*, 469 F.3d 551, 555, 557 (6th Cir. 2006) (affirming district court's dismissal *sua sponte* for lack of jurisdiction under *Younger*).

are: (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property. *Ojeda v. Wal-Mart Stores, Inc.*, 956 S.W.2d 704, 707 (Tex. App. 1997, pet. denied). Dorward alleges no facts that demonstrate that Waste Management assumed and exercised dominion and control over the property that defendants removed and placed in the dumpster. Rather, Dorward alleges only that Waste Management provided a dumpster to the City. Merely providing a dumpster to the City, however, does not mean that Waste Management thereby assumes and exercises dominion and control over the dumpster and whatever the City may put into it.

Accordingly, the court dismisses count nine as to Waste Management, although it grants Dorward leave to replead this claim if he can plead a viable conversion claim.

C

In count ten, Dorward alleges that Waste Management committed a "theft" of his property under Tex. Civ. Prac. Rem. Code Ann. § 134.002(2) (Vernon 2005).

Waste Management contends that this claim should be dismissed

because the complaint fails to allege that Waste Management had any intent to deprive Dorward of his property, a necessary element of a cause of action under the TTLA. *See* Tex. Pen. Code Ann. § 31.03(a) (Vernon 2003) ("A person commits [the offense of theft] if he unlawfully appropriates property with intent to deprive the owner of property."). As a supplier under contract to the City, Waste Management maintains that its only intent was to provide the City with a dumpster upon the City's request. Citing *Hefner v. State*, 735 S.W.2d 608, 616 (Tex. App. 1987, pet. denied), Dorward argues that Waste Management's intent to deprive him of his property can be inferred from its refusal to return the wrongfully seized items in the dumpster.

Dorward's reliance on *Hefner*, however, is misplaced. Because the defendant in *Hefner* undisputedly had possession and control of the property, *id.* at 611 ("The evidence is undisputed that the complainant brought $67,000 to [defendant's] office" and "[defendant], or [defendant's] office manager, accepted the $67,000 from complainant."), his intent to deprive could be inferred from his refusal to return the property. Here, in contrast, all that Dorward has alleged is that defendants took Dorward's property, purportedly pursuant to a search warrant, and placed it in a dumpster that Waste Management provided. Dorward has alleged no facts demonstrating that Waste Management had possession and control of the items removed by defendants at the time that Waste

Management allegedly refused to return those items to Dorward. Dorward cites no authority, and the court has found none, to support the premise that intent to deprive can be inferred under such circumstances.[15] The court therefore dismisses count ten, although it grants Dorward leave to replead this claim if he can plead a viable theft claim.

D

In count thirteen, Dorward alleges that defendants breached duties owed to him arising out of a bailment relationship. Specifically, he avers that the warrant pursuant to which defendants entered his property putatively authorized the removal only of particular items deemed violative of City ordinances (e.g., overgrown or other impure or unwholesome matter) and "only for the limited, specific purpose" of taking possession of them and carrying them before the magistrate, Compl. ¶ 105; that "[b]y accepting delivery of items removed from the Lot," Waste Management and defendants "entered [into] either an express and/or implied

_____

[15]In a footnote, Dorward argues that "Waste Management, *as a bailee*, converted Dorward's property," P. Br. 16 n.24 (emphasis added), an act that qualifies as "theft" under Tex. Pen. Code Ann. § 31.02 (Vernon 2003). *See id.* ("Theft as defined in Section 31.03 constitutes a single offense superseding the separate offenses previously known as theft, theft by false pretext, conversion by a bailee . . . ."). For reasons discussed *infra* at § VII(D), the court holds that Dorward has failed to plead a bailment relationship between himself and Waste Management. Accordingly, the court rejects Dorward's argument that Waste Management, as a bailee, has committed "theft" under § 31.02 by converting Dorward's property.

agreement to safeguard the items and to carry them before the magistrate and thereafter to return the items to Dorward," Compl. ¶ 107. Waste Management contends that Dorward's bailment claim fails because Dorward has not adequately pleaded the existence of an agreement that gives rise to a bailment relationship. The court agrees.

The court has explained *supra* at § IV(E)(3) the requirements for a bailment under Texas law. According to Dorward, because Waste Management accepted delivery of the items removed from the Lot by defendants, it entered into an agreement essentially to abide by the terms of the warrant, e.g., to carry the removed items before the magistrate and to return the items safely to Dorward. In other words, Dorward argues that a bailment relationship exists between the City and Waste Management, and that Waste Management is liable to Dorward as a third-party beneficiary of that relationship, for failing to exercise the care required by the search warrant over the bailed property. *See* P. Br. 17 ("[T]he City delivered Dorward's [property] to Waste Management. Waste Management accepted those items. There was a contract between the City and Waste Management.").

Assuming *arguendo* that a bailee can be liable to a third-party beneficiary like Dorward, the court holds that Dorward has not adequately pleaded the existence of an agreement between Waste Management and the City that gives rise to a bailment relationship.

Dorward confuses the presence of a contract between Waste Management and the City, under which Waste Management agreed to supply the City with a dumpster, with a bailment agreement between Waste Management and the City under which the bailee agreed to take due care over the bailed property and return it at the appropriate time to the bailor.  Dorward has adequately plead the former, but not the latter.  Dorward avers only that defendants placed the items they removed from the Lot into a dumpster provided by Waste Management.  Dorward has not adequately pleaded that the City and Waste Management thereby entered into an implied contract that Waste Management would, according to the terms of the search warrant, keep safe any items placed in the dumpster by the City. Accordingly, because Dorward has failed to plead a bailment relationship, the court dismisses his bailment claim against Waste Management, although it grants him leave to replead, assuming if he can plead a viable claim.[16]

E

In count fifteen, Dorward avers that Waste Management, together with defendants, has violated, and is preparing to

---

[16]The court also notes that Dorward has failed to plead a bailment relationship between himself and Waste Management.  There is no allegation of any express or implied agreement by which Dorward offered his property to Waste Management and Waste Management accepted it.  To the contrary, Dorward's complaint suggests that defendants removed items from his garden *without* his consent and then placed them in a dumpster that Waste Management provided.

violate, various provisions of the Texas CCP.  Specifically, he points to certain provisions that require a peace officer who executes a warrant to carry the items seized before the magistrate and to retain custody of them until the magistrate issues an order for their safekeeping.  *See* Tex. Code Crim. Proc. §§ 18.09, 18.10. In connection with this claim, Dorward seeks injunctive relief essentially identical to that requested in his second claim: requiring Waste Management, together with defendants, to maintain custody and control of the items removed from the Lot and placed in a dumpster and prevent damage to, disposal, or loss of them.  For the reasons explained *supra* at § III(B)(2), the court abstains under *Younger* from exercising jurisdiction over count fifteen and dismisses it without prejudice.  The court will permit Dorward to replead this claim after the pending municipal prosecution is concluded and any appeals are exhausted, if he has adequate grounds to do so.

F

In count sixteen, Dorward brings a civil conspiracy claim, allegeing that "Ramirez, Carrillo, Sellers, Doe, Roe, the City and Waste Management had as an object to be accomplished the removal from the Lot and the disposal of Dorward's plants and bulbs," Compl. ¶ 125, and "had an agreement" concerning this object, *id.* at ¶ 126.  He additionally avers that they engaged in several overt acts, including arranging for the dumpster, cutting through the

fence surrounding the Lot, and removing plants and other items from the Lot and placing them in the dumpster. *Id.* at ¶ 127.

In Texas, a civil conspiracy is a combination "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (citation omitted). The elements are: "(1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt, unlawful acts; and (5) proximately resulting in injury." *Id.* "A defendant's liability is derivative of an underlying tort; without independent tortious conduct, there is no actionable civil conspiracy claim." *Tifford v. Tandem Energy Corp.*, 562 F.3d 699, 709-10 (5th Cir. 2009) (citing *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 381 (Tex. App. 2007, no pet.). And because a civil conspiracy requires specific intent, the underlying tort must be an intentional tort. *See Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996) ("Civil conspiracy requires specific intent . . . . parties cannot engage in a civil conspiracy to be negligent.").

The court holds that Dorward has failed to plead a conspiracy claim against Waste Management because he has failed to plead an underlying intentional tort claim against Waste Management. Although the court dismisses this claim, it grants Dorward leave to replead if he can plead a viable conspiracy claim.

G

In count seventeen, Dorward alleges that defendants acted "either with malice or with gross negligence" and seeks on that ground to recover exemplary damages. Compl. ¶ 131. The parties agree that Dorward's claim for exemplary damages depends upon whether he has stated a claim for relief against Waste Management as to any intentional tort. *See AIG Life Ins. Co. v. Federated Mut. Ins. Co.*, 200 S.W.3d 280, 287 (Tex. App. 2006, pet. denied) ("If the tortfeasor acted with malice, exemplary damages are recoverable for conversion and for conspiracy." (citing *Cass v. Stephens*, 156 S.W.3d 38, 73 (Tex. App. 2004, pet. filed) (conversion); *Aboud v. Schlichtemeier*, 6 S.W.3d 742, 750 (Tex. App. 1999, pet. denied) (conspiracy)).

The court holds that Dorward has failed to plead a viable claim against Waste Management for exemplary damages because he has failed to plead a viable intentional tort against Waste Management. Although the court dismisses this claim, it grants Dorward leave to replead if he can plead a viable claim for exemplary damages.

H

In count eighteen, Dorward seeks attorney's fees. Waste Management contends there is no statutory or other basis for his request. Dorward responds that attorney's fees are authorized under 42 U.S.C. § 1988 as to his § 1983 claims. For the reasons

explained *supra* at § IV(H), the court agrees.  Although the court is abstaining from considering his § 1983 claim against Waste Management, it is not dismissing the claim on the merits. Therefore, Dorward may at some point be able to recover attorney's fees under § 1988.  Accordingly, Dorward's claim for attorney's fees as to his § 1983 claim is dismissed without prejudice.

Similarly, because the court is allowing Dorward to replead, *inter alia*, his TTLA and bailment claims, he may still be able to recover attorney's fees.  *See Westlake Surgical, L.P. v. Turner*, 2009 WL 2410276, at *3 (Tex. App. Aug. 7, 2009, no pet. h.) (not designated for publication) ("The TTLA allows someone who has been damaged by another's theft to file a civil suit against the wrongdoer for actual damages and attorney's fees." (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 134.003-.005)); *Circle R Vending Co. v. Hoerger*, 1991 WL 165102, at *2 (Tex. App. Aug. 29, 1991, no pet.) (not designated for publication) (holding that because foundation of bailment action lies in contract, attorney's fees are recoverable in bailment action) (citing *Allright, Inc. v. Burgard*, 666 S.W.2d 515, 517 (Tex. App. 1983, writ refused)).  Accordingly, the court dismisses his claim for attorney's fees without prejudice to the extent related to his TTLA and bailment claims.  The court grants Dorward leave to replead if he can plead a viable claim for attorney's fees.  Dorward's claim for attorney's fees as to his conversion claim, however, is dismissed with prejudice because

- 66 -

"[a]ttorney's fees are not recoverable as either actual or exemplary damages on a conversion claim." *Oscar M. Telfair, III, P.C. v. Bridges*, 161 S.W.3d 167, 170 (Tex. App. 2005, no pet.).

\* \* \*

For the reasons stated, the court grants in part and denies in part defendants' February 9, 2009 motion to dismiss and Waste Management's May 1, 2009 motion for judgment on the pleadings. The court grants Dorward 30 days from the date of this memorandum opinion and order to file a second amended complaint.[17] Regarding count seven, if Dorward concludes that he cannot cure the pleading defect by amendment, he may file within this 30-day period a brief that sets out his opposition to dismissing count seven on the basis explained in § IV(C)(2).

**SO ORDERED.**

August 28, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[17]The court denies the following two motions: Dorward's February 10, 2009 motion to compel the filing of a certificate of interested persons, and his February 10, 2009 motion to strike defendant's motion to dismiss. The motion to compel is denied as moot because defendants filed the certificate on February 10, 2009. The motion to strike lacks merit because, under the court's February 10, 2009 order, the parties to this case are permitted to file motions on paper.